## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| SEAN HENDERSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:19-cv-06380 |
| | ) | |
| Chicago Police Officer ALBERT RANGEL, Star | ) | Honorable Thomas M. Durkin |
| No. 5339; Chicago Police Officer ADRIAN | ) | |
| ROSILES, Star No. 19462; and THE CITY OF | ) | |
| CHICAGO, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' MOTION TO DISMISS

Defendant, City of Chicago (City), by and through its attorney, Mark A. Flessner, and defendants, Albert Rangel and Adrian Rosiles, by and through one of their attorneys, Jordan F. Yurchich, move to dismiss plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted. In support of this motion, defendants state as follows:

### INTRODUCTION

This case arises from plaintiff's arrest and prosecution for unlawfully possessing a firearm on March 10, 2017. After a Cook County jury found him not guilty, he initiated this action alleging that his constitutional rights were violated because he was held in pretrial custody without probable cause. The complaint, however, must be dismissed in its entirety because plaintiff has improvidently pled himself out of court by incorporating by reference video footage of the underlying incident, which conclusively establishes that no constitutional violation occurred. In

light of the historical facts captured on the video recordings, this court may rule as a matter of law on the central issue in this case—namely, whether Officers Rangel and Rosiles had probable cause to charge plaintiff with the offense of armed habitual criminal. Since plaintiff's claims are rebutted by the videos and cannot be cured in an amended pleading, his complaint should be dismissed with prejudice.

## BACKGROUND[1]

On March 10, 2017, at approximately 10 p.m., Chicago police officers Albert Rangel and Adrian Rosiles were on routine patrol in the Auburn Gresham neighborhood when they stopped a vehicle at 932 West 79th Street because the front-seat passenger was not wearing a seatbelt, a violation of state law. (Pl.'s Compl. ¶¶ 8-9, ECF No. 1.) *See* 625 ILCS 5/12-603.1(a) (West 2016) ("Each driver and passenger of a motor vehicle operated on a street or highway in this State shall wear a properly adjusted and fastened seat safety belt."). Officer Rangel approached the driver's side door, while Officer Rosiles approached the front passenger side door. (Ex. A, Rangel's BWC at 03:56:22; Ex. B, Rosiles' BWC at 03:56:00.) Officer Rangel spoke to plaintiff through the partially rolled-down driver's side window and inquired why the passenger was not wearing a seatbelt. (Ex. A, 03:56:19.) Although his response is inaudible, the body-worn camera clearly shows that the passenger is not wearing a seatbelt. (Ex. B, 03:56:23.) During this exchange, it

---

[1] The following facts are taken from the complaint and are presumed true for purposes of this motion. *Roberts v. City of Chicago*, 817 F.3d 561, 564 (7th Cir. 2016). The facts are also taken from Officer Rangel's and Rosiles' body-worn cameras (BWC) that are referenced in the complaint and central to plaintiff's claims. (Pl.'s Compl. ¶ 13; ECF No. 1.) *See Bogie v. Rosenberg*, 705 F.3d 603, 608-09 (7th Cir. 2013) (in considering a motion to dismiss, district courts are free to consider video recordings that are referenced in the complaint and central to the claim); *Brownmark Films, LLC v. Comedy Partners, LLC v. Comedy Partners*, 682 F.3d 687, 690-91 (7th Cir. 2012) (stating that it makes "eminently good sense" to extend the incorporation-by-reference doctrine to video recordings). To the extent the video conflicts with the complaint, the video controls. *Bogie*, 705 F.3d at 609.

became apparent to the officers that the odor of cannabis was emanating from inside the vehicle and they both used their flashlights to illuminate the interior of the Chrysler 200. (Ex. B, 03:56:23.) The video footage from Officer Rosiles' body-worn camera shows the front-seat passenger has a partially burnt hand-rolled cigar with cannabis on his lap. (Ex. B, 03:56:13.) After smelling cannabis and observing the blunt, Officer Rangel ordered plaintiff out of the vehicle. (Ex. A, 03:57:36.) Plaintiff refused and rolled up the tinted windows. (Ex. A, 03:57:41.) Immediately thereafter, Officer Rangel and another officer who had arrived as backup, observed plaintiff lean forward and reach to the floor, prompting them to yell at him to raise his hands.[2] (Ex. A, 03:57:47.)

A few minutes later, a sergeant arrived at the scene, walked up to the driver-side window (which was now partially open), told plaintiff it "reeks of weed," and instructed him to exit the car. Plaintiff continued to protest but eventually complied. (Ex. A, 04:02:10 to 04:03:08.) Officer Rangel searched the front driver's-side of the vehicle and immediately saw a gun under the driver's seat where plaintiff was sitting and reaching. (Ex. A, 04:04:03.) He announced "143" to alert the other officers and then recovered a .45 caliber Colt 1911 semiautomatic handgun that was loaded with 10 rounds of ammunition. (Ex. A, 04:04:07.) Officer Rosiles, meanwhile, recovered the hand-rolled cigar with cannabis from the passenger's lap and conducted a protective pat down of his person. (Ex. B, 04:03:15 to 04:03:47.)

Plaintiff and the passenger were arrested and transported to the 6th district police station for processing. There, they were placed in separate interview rooms and advised of their *Miranda* rights. (Ex. C, Rosiles' BWC at 05:20:04; Ex. D, Rosiles' BWC at 05:32:19.) The passenger was

---

[2] For reference, the body camera depicts plaintiff in a seated position at timestamp 03:57:41. (Ex. A, 03:57:41.) Four seconds later, after the tinted windows are rolled up, plaintiff's head is lowered near the steering wheel, the white shoulder patch on his jacket is no longer visible, and the seatbelt is extended forward. (Ex. A, 03:57:45.)

interviewed first and told the officers that the gun was not his and he knew nothing about it. (Ex. C, 05:23:28.) The officers then interviewed plaintiff, but he declined to answer questions. (Ex. D, 05:31:55.)

Officers Rangel and Rosiles prepared various police reports summarizing the events at issue and identifying plaintiff as the possessor of the recovered firearm. According to plaintiff's complaint, however, the reports falsely state that the officers observed him "lean toward the left side of the car and make a furtive gesture towards the floorboard of the car." (Pl.'s Compl. ¶ 12.) He also alleges, in a conclusory manner, that the officers did not have "probable cause or reasonable suspicion justifying [the] illegal stop." (*Id.* ¶ 10.) Curiously, he does not dispute the officers' other statements—namely, that the front-seat passenger was not wearing a seatbelt; "a strong odor of burnt cannabis emitt[ed] from the vehicle;" they "observed a burnt brown hand rolled cigar … [containing] suspect cannabis located on [the passenger's] lap;" that a loaded handgun was recovered from under the driver's seat; or that he had two prior felony convictions. (Ex. E, Original Case Incident Report; Ex. F, Arrest Report.)[3] The officers subsequently charged plaintiff with the offenses of armed habitual criminal (720 ILCS 5/24-1.7(a) (West 2016)) and failing to wear a seatbelt (625 ILCS 5/12-603.1 (West 2016)). (Ex. G, Certified Statement of Disposition.) Unable to post bond, plaintiff sat in Cook County jail for six months until he was found not guilty by a jury on October 2, 2017. (Pl.'s Compl. ¶ 15.)

---

[3] Our reference to the police reports might raise an eyebrow, but it should not. "A motion under Rule 12(b)(6) can be based only on the complaint itself, documents attached to the complaint, *documents that are critical to the complaint and referred to in it*, and information that is subject to proper judicial notice. *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012) (emphasis added.) Here, plaintiff's claims are based on false statements contained in the police reports. (Pl.'s Compl. ¶¶ 12-13, 17, 19, 21, 23.)

On September 25, 2019, plaintiff commenced this action against Officers Rangel and Rosiles and the City alleging that he was held in jail pending trial based on fabricated evidence, violating his due-process rights under the Fifth and Fourteenth Amendments (counts I and II), and his right to be free from unreasonable seizures under the Fourth Amendment (counts III and IV). He also raised a claim under Illinois law for indemnification (count V). Plaintiff's claims, however, should be dismissed for three reasons: First, the due process clause does not apply to claims of unlawful pretrial detention. Second, the gun charges against plaintiff were supported by probable cause, thereby eviscerating any Fourth Amendment claim. Third, the state law indemnification claim must be dismissed because the officers' actions did not violate plaintiff's constitutional rights. Because plaintiff failed to adequately establish a claim entitling him to relief, his complaint must be dismissed. And, as repleading cannot solve these problems, the dismissal should be with prejudice.

## STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss, plaintiff's complaint must "state a claim to relief that is plausible on its face." *Bell Atlantic* v. *Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although a court must accept all of the plaintiff's factual allegations as true when reviewing the complaint, conclusory allegations merely restating the elements of a cause of action do not receive this presumption: "A complaint must allege *facts* to support a cause of action's basic elements; the plaintiff is required to do at least that much." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (emphasis added).

**ANALYSIS**

I.     **THE DUE PROCESS CLAIMS**

In counts I and II of his complaint, plaintiff alleges that Officers Rangel and Rosiles violated his due process rights under the Fifth and Fourteenth Amendments by fabricating evidence. Plaintiff's claims of unlawful pretrial detention, however, are governed exclusively by the Fourth Amendment.

A.     **The Fifth Amendment does not apply to State Actors**

As a preliminary matter, plaintiff's Fifth Amendment claim must be dismissed because Officers Rangel and Rosiles were not acting under color of federal law. It is well settled that the Fifth Amendment does not apply to the States. *Dusenbery v. United States,* 534 U.S. 161, 167 (2002); *Public Utilities Comm. v. Pollak,* 343 U.S. 451, 461 (1952) (the Fifth Amendment applies to and restricts only the federal government); *Salazar v. City of Chicago*, No. 84-10156, 1985 WL 2482, at *4 (N.D. Ill. Sept. 9, 1985) (Fifth Amendment "only comes into play when actions are taken under color of federal, not state, law"). In this case, plaintiff alleges his Fifth Amendment rights were violated by two Chicago police officers who were acting under color of state law. He has not alleged any action by the federal government or federal officials. As a consequence, the Fifth Amendment does not govern his wrongful pretrial detention claim against Officers Rangel and Rosiles.

B.     **The Fourteenth Amendment does not apply to Pretrial Detention Claims**

Plaintiff also maintains that Officers Rangel and Rosiles violated his due process rights under the Fourteenth Amendment by making false statements in their police reports and testifying falsely. (Pl.'s Compl. ¶¶ 16-19.)

In *Lewis v. City of Chicago*, 914 F.3d 472, 479 (7th Cir. 2019), the Seventh Circuit explained that "all section 1983 claims for wrongful pretrial detention—whether based on fabricated evidence or some other defect—sound in the Fourth Amendment." The court reasoned as follows:

> "[T]he constitutional right in question is the 'right not to be held in custody without probable cause,' the violation of which gives rise to a 'plain-vanilla Fourth Amendment' claim under § 1983 because the essential constitutional wrong is the 'absence of probable cause that would justify the detention.' [Citations]. In other words, the Fourth Amendment, not the Due Process Clause, is the source of the right in a § 1983 claim for unlawful pretrial detention, whether before or after the initiation of formal legal process." *Id.*; *see also Manuel v. City of Joliet*, 903 F.3d 667, 670 (7th Cir. 2018).

The court also distinguished a claim for wrongful *conviction* based on fabricated evidence from a claim for wrongful *pretrial detention* based on fabricated evidence, noting that convictions based on fabricated evidence always violate a defendant's right to due process. *Id.* at 479-80; *see also Camm v. Faith*, 937 F.3d 1096, 1105 (7th Cir. 2019) (noting that *Lewis* makes clear that, in cases not involving convictions, a pretrial detention claim sounds only in the Fourth Amendment).

In this case, plaintiff was "acquitted by a jury" (*see* Pl.'s Compl. ¶ 15), which means his claim is not a claim for wrongful conviction but a claim for wrongful pretrial detention. In accordance with *Lewis*, plaintiff's Fifth and Fourteenth Amendment procedural due process claims fail as a matter of law and dismissal of counts I and II is appropriate.

## II.    THE FOURTH AMENDMENT CLAIMS

Next, in counts III and IV of his complaint, plaintiff alleges a Fourth Amendment claim for unlawful pretrial detention based on fabricated evidence.[4] The well-pled factual allegations in

---

[4] Plaintiff's complaint cites both the Fourth and Fourteenth Amendments, but properly construed, his claim is really one for wrongful detention in violation of the Fourth Amendment (Pl.'s Compl. ¶ 21, 23; ECF No. 1.)

plaintiff's complaint, which incorporated by reference the body-worn camera footage of the incident, affirmatively establish that probable cause existed for his detention, thereby eviscerating his claims.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons ... against unreasonable ... seizures." U.S. Const. amend. IV. A seizure is reasonable only if it is based on probable cause to believe the detainee has committed a crime. *Manuel v. City of Joliet*, __ U.S. __, 137 S. Ct. 911, 919-20 (2017). "[P]robable cause is a common-sense inquiry requiring only a probability of criminal activity." *Whitlock v. Brown*, 596 F.3d 406, 411 (7th Cir. 2010). "Probable cause is assessed objectively" based on the information known to officers and the conclusions that might reasonably be drawn from that information. *Holmes v. Village of Hoffman Estates*, 511 F.3d 673, 679 (7th Cir. 2007). To determine whether probable cause existed, courts may consider the officers' collective knowledge of facts. *United States v. Howard*, 883 F.3d 703, 707 (7th Cir. 2018). The existence of probable cause is an absolute defense to section 1983 claims alleging unreasonable seizures. *Norris v. Serrato*, 761 Fed. Appx. 612, 615 (7th Cir. 2019).

Plaintiff's complaint sets forth eight paragraphs of factual allegations spanning two major "claims" or sets of facts: (1) the initial vehicle stop, and (2) his pretrial detention. (He does not challenge the search of the vehicle or his arrest). We address each claim in turn.

### A.    The Vehicle Stop

Plaintiff seems to allege that the initial stop of his vehicle by the police was unlawful. It is well settled that the detention of a person and his vehicle pursuant to a traffic stop, even for a short time, constitutes a seizure under the Fourth Amendment. *Whren v. United States*, 517 U.S. 806, 809-10 (1996). As such, a traffic stop must be reasonable; that is, an officer's decision to stop an

automobile must be supported by probable cause to believe that a traffic violation has occurred. *Id.* at 810.

In this case, plaintiff alleges that "[a]t the time of the traffic stop neither officer had probable cause or reasonable suspicion justifying this illegal stop." (Pl.'s Compl. ¶¶ 10, 21, 23.) This allegation, however, is not entitled to the presumption of truth because it is a legal conclusion that is not supported by any facts. *See Iqbal*, 556 U.S. at 678 (when the complaint alleges legal conclusions, those allegations do not benefit from the presumption of truth); *Harris v. Ross*, No. 1:17-cv-06332, 2018 WL 1993217, at *2 (N.D. Ill. Apr. 27, 2018) (plaintiff's statement regarding the lack of probable cause is a legal conclusion, not a factual allegation). Thus, plaintiff's bald assertion that the initial traffic stop was made without probable cause or reasonable suspicion is not enough to support his claim. Without more, the complaint fails to plead an absence of probable cause (or reasonable suspicion) for the initial traffic stop.

In any event, the officers in this case observed the front-seat passenger riding in plaintiff's vehicle without a seatbelt as required by Illinois law. The body-worn camera footage clearly shows that the front passenger is not wearing a seatbelt and, when the officers inquired why he wasn't wearing a seatbelt, he all but admitted the point by pleading ignorance. Of course, this prompted Officer Rosiles to politely inform the passenger, "Yeah, you gotta wear your seatbelt, dude. Man, it's cool. It happens. You didn't know, you didn't know." (Ex. B, 03:56:20.) As such, Officers Rangel and Rosiles had probable cause to stop plaintiff's vehicle, which satisfied the Fourth Amendment's requirement that seizures be reasonable under the circumstances. *United States v. Dowthard*, 500 F.3d 567, 569 (7th Cir. 2007) (the officers' initial traffic stop was reasonable where defendant was not wearing a seatbelt); *United States v. Taylor*, 596 F.3d 373, 376 (7th Cir. 2010) (stop was proper because driver's failure to wear seatbelt gave officers probable cause to believe

driver committed a traffic offense). Accordingly, to the extent plaintiff alleges that the initial traffic stop violated his Fourth Amendment rights, his complaint fails to plead a plausible claim for relief and dismissal is appropriate.

**B.   The Pretrial Detention**

Next, plaintiff contends he was detained pending trial in violation of his Fourth Amendment right to remain free of unreasonable governmental seizures because the officers lacked probable cause to charge him with being an armed habitual criminal.

In *Young v. City of Chicago*, __ F. Supp. 3d __, 2019 WL 6349892, at *1 (N.D. Ill. 2019), Chicago police officers stopped Young's vehicle because the rear-seat passenger, Hughes, was not wearing a seatbelt. As the officers approached the vehicle, Hughes told Young to "take this" and put a gun on the car's armrest. *Id.* Young responded, "Hell no," and put his hands up. *Id.* The officers ordered Young to exit the vehicle and he complied. *Id.* at *2. Young then told the officers that a gun was in the car and it belonged to Hughes. *Id.* Young and Hughes were both arrested and charged with unlawful use of a weapon and being an armed habitual criminal. *Id.* at 2-3. Following trial, they were found not guilty. *Id.* at *3. Young then sued the officers for wrongful pretrial detention. The district court granted the officers' motion for summary judgment, finding no genuine issue of material fact on the question of probable cause. In so holding, the district court reasoned as follows:

> "The undisputed facts demonstrate the defendant officers had probable cause to initiate criminal proceedings against Young. There is no dispute that Hughes told Young he had a gun, the arresting officers found a gun on the center console of the car Young was driving, the only other occupant of that vehicle, Hughes, stated that he did not handle the gun that day, and Young had prior felony convictions."

*Id.* at 4. Based on these facts, the court held that "a reasonable officer would reasonably believe that Young had committed the offenses of unlawful use of a weapon by a convicted felon and being an armed habitual criminal." *Id.*

Similarly here, the allegations in the complaint and the body-worn camera footage compels the conclusion that Officers Rangel and Rosiles had probable cause to initiate criminal proceedings against plaintiff. There is no dispute that plaintiff was the driver of the car, a loaded handgun was recovered from beneath the driver's seat, and plaintiff has two prior qualifying felony convictions.[5] Obviously, plaintiff was in close proximity to the gun—within arm's reach—and the officers watched as he bent over in an attempt to conceal the firearm, which further demonstrates that plaintiff exercised *actual* dominion and control over the contraband. We also note that the only other occupant in the vehicle was the front-seat passenger who did not make any furtive movements, kept his hands up during the encounter, and later told the officers that the gun was not his, thereby implicating plaintiff. Based upon the historical facts captured on the video, a reasonable police officer could conclude that plaintiff unlawfully possessed the handgun in violation of Illinois's armed habitual criminal statute. 720 ILCS 5/24-1.7 (West 2016) (a person commits the offense of being an armed habitual criminal when that person "receives, sells, possesses, or transfers any firearm" after previously having been convicted for two or more qualifying felony offenses); *People v. Rangel,* 163 Ill. App. 3d 730, 740 (1987) (the defendant was found in knowing possession of a gun found in plain view on the floor of a car where he had been sitting just before he exited the car); *People v. Love*, 404 Ill. App. 3d 784, 789 (2010) (defendant

---

[5] He was convicted of aggravated unlawful use of a weapon (*see* Ex. H, Certified Copy of Disposition, *People v. Henderson*, No. 06-CR-26955 (Cir. Ct. Cook Co.)); and possession of a controlled substance (*see* Ex. I, Certified Copy of Disposition, *People v. Henderson*, No. 08-CR-368305 (Cir. Ct. Cook Co.)).

was in constructive possession of paper bag that contained handgun and cannabis where police officer observed the paper bag laying in back seat where defendant had been sitting).

Nonetheless, plaintiff alleges he did not possess the gun and had no knowledge of its existence. (Pl.'s Compl. ¶ 11.) The complaint, however, does not dispute that a gun was recovered from under the driver's seat where plaintiff was sitting. In any case, the officers had no obligation to resolve the issue of whether plaintiff knew of the gun found under his seat in the car he was driving. *Kelley v. Myler*, 149 F.3d 641, 646 (7th Cir. 1998) (Once an officer has established probable cause, "he need not continue investigating in order to test the suspect's claim of innocence."); *Young*, 2019 WL 6349892, at *4 ("The officers had no obligation to resolve the issue of whether Young knew of the gun found next to his seat in the car he was driving."). Because Officers Rangel and Rosiles were not required to accept plaintiff's statement that he had no knowledge a firearm was in the vehicle, his allegation in this regard does not demonstrate the absence of probable cause.

Plaintiff also alleges that the officers falsely stated that they "saw [him] lean toward the left side of the car and make a furtive gesture towards the floorboard of the car." (Pl.'s Compl. ¶¶ 12, 21, 23.) In essence, he is claiming that, without furtive movements, the officers lacked probable cause to arrest and charge him with possessing the firearm. The fatal flaw in plaintiff's allegation is he does not explain how the furtive movements, or lack thereof, make the officers' probable cause determination unreasonable. Even if the officers falsely stated that plaintiff made furtive movements, it would not negate a later probable cause determination based on evidence collected during the stop.

Plaintiff also complains that the officers falsely stated that he "committ[ed] a traffic violation," which they used to justify the initial stop of the vehicle. (Pl.'s Compl. ¶¶ 10, 21, 23.)

As discussed above, this contention is rebutted by the videos. Not to mention, the fact that the officers allegedly lacked probable cause or reasonable suspicion for the initial stop does not save plaintiff's claim as there is no "fruit of the poisonous tree" doctrine in claims brought pursuant to section 1983. *See Vaughn v. Chapman*, 662 Fed. Appx. 464, 467 (7th Cir. 2016) ("The exclusionary rule does not apply in a section 1983 suit against police officers."); *Townes v. City of New York*, 176 F.3d 138, 145 (2d Cir. 1999) (fruit of the poisonous tree doctrine cannot link an unreasonable seizure and search to section 1983 plaintiff's conviction). In other words, even if the officers lied about the traffic violation, the results of the vehicle search provided the necessary probable cause for the subsequent period of detention. *See Vaughn*, 662 Fed. Appx. at 467 ("regardless of whether Troopers Chapman and Howell had justification for searching the trunk of the car that Vaughn was driving, their discovery established probable cause for the charge"); *Williams v. Carroll*, 2010 WL 5463362 at *3-4 (N.D. Ill. 2010) (explaining that the lack of probable cause to stop and search does not vitiate the probable cause to arrest). As such, the question of whether the officers lawfully stopped the vehicle has no bearing on whether probable cause existed to institute proceedings against plaintiff.

In sum, Officers Rangel and Rosiles had probable cause to charge plaintiff with being an armed habitual criminal, and plaintiff cannot state a plausible claim for unreasonable pretrial detention. Because plaintiff's constitutional claims cannot proceed under any of the legal theories he has advanced, dismissal of counts III and IV is proper.

### III.    THE INDEMNIFICATION CLAIM

Finally, plaintiff asserts a state law indemnification claim against the City (count V). The indemnification claim is merely a way to hold the City liable for the actions of its employees. 745 ILCS 10/2-109 (West 2016) (the City is not liable for an injury resulting from an act or omission of

its employee where the employee is not liable). Since all the underlying claims against Officers

Rangel and Rosiles should be dismissed, the indemnification claim should likewise be dismissed.

## CONCLUSION

In conclusion, plaintiff's section 1983 claims against Officers Rangel and Rosiles should

be dismissed for failing to plead a Fourth, Fifth, and Fourteenth Amendment violation. Moreover,

dismissal of the state law indemnification claim is appropriate as plaintiff failed to state a claim

against the officers. Further, because prevailing Seventh Circuit precedent dooms plaintiff's Fourth

Amendment claims, repleading the claims would be futile. The dismissal, therefore, should be with

prejudice.

WHEREFORE, defendants respectfully request that this court dismiss with prejudice (1)

the due process claims (counts I and II), (2) the wrongful pretrial detention claim (counts III and

IV), (3) the state law indemnification claim (count V); and (4) grant such further relief this court

finds reasonable and just.

DATED: January 24, 2020                    Respectfully submitted,

                                             MARK A. FLESSNER
                                             Corporation Counsel for the City of Chicago

                             BY:    */s/ Jordan F. Yurchich*        
                                             JORDAN F. YURCHICH
                                           Assistant Corporation Counsel

Scott A. Cohen, Assistant Corporation Counsel Supervisor
Emily Dory, Assistant Corporation Counsel
Jordan F. Yurchich, Assistant Corporation Counsel
City of Chicago, Department of Law
30 North LaSalle Street, Suite 900
Chicago, Illinois 60602
312.745.1625 (Phone)
Jordan.yurchich2@cityofchicago.org
Attorney No. 6307379

**CERTIFICATE OF SERVICE**

I hereby certify that, on **January 24, 2020**, I submitted with the Clerk for the Northern District of Illinois using the Court's electronic filing system or CM/ECF **Defendants' Motion to Dismiss**, and thereby provided a copy of same by service to all attorneys of record at the electronic addresses they provided to the court.

/s/ Jordan F. Yurchich
JORDAN F. YURCHICH
Assistant Corporation Counsel

- 15 -